# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **JERRY D. BALL,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:11CV00062 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By: James P. Jones |
| **COMMISSIONER OF** | ) | United States District Judge |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

*Lewey K. Lee, Lee & Phipps, Wise, Virginia, for Plaintiff. Nora Koch, Acting Regional Chief Counsel, Region III, Roxanne Andrews, Assistant Regional Counsel, and Charles J. Kawas, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I vacate the final decision of the Commissioner and remand the case for further consideration.

I

Plaintiff Jerry D. Ball filed this claim challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying his claim for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act

Case 1:11-cv-00062-JPJ -PMS   Document 15   Filed 07/26/12   Page 2 of 12   Pageid#: 408

(the "Act"), 42 U.S.C.A. § 401-433 (West 2011 & Supp. 2012).[1]  Jurisdiction of this court exists under 42 U.S.C.A. § 405(g).

Ball applied for benefits on July 31, 2009, alleging disability beginning on January 1, 2006.  His date last insured was December 31, 2007.  Ball's claims were denied initially and upon reconsideration.  A hearing was held before an administrative law judge ("ALJ") on January 11, 2011.  The ALJ issued a decision denying benefits on January 26, 2011.  Ball's request for reconsideration by the Social Security Administration's Appeals Council was denied on June 21, 2011.  The ALJ's decision thus became the final decision of the Commissioner.  Ball then filed this action seeking judicial review of the ALJ's decision.

The parties have filed cross motions for summary judgment, which have been briefed.  The case is ripe for decision.

II

Ball was 48 years old at the time of the ALJ's decision and thus was a younger individual under the regulations.  20 C.F.R. § 404.1563(c) (2012).  Ball graduated from high school.  His prior relevant work was as a farmer.  Ball claimed disability based on back and knee pain.

---

[1] Ball initially filed claims for both DIB and supplemental security income benefits ("SSI") pursuant to Title XVI of the Act.  Ball withdrew his claim for SSI at the administrative hearing.

The record revealed that Ball had had problems with pain in his back from at least 2003. In April 2006, MRI scans of the thoracic and lumbar spine showed a normal thoracic spine and a large left L5-S1 herniated nucleus pulposus ("HNP"). The lumbar spine was otherwise normal.

On April 17, 2006, Jim C. Brasfield, M.D., performed a left L5-S1 partial hemilaminectomy and discectomy for the HNP. After the surgery, in May, Dr. Brasfield reported that Ball was doing well. Ball was neurovascularly intact in the lower extremities and there was no evidence of foot drop. Ball reported that his pain was nothing like it was before but noted that he still had some minimal left leg pain. Later that month, Ball continued to improve, reporting that his left leg pain was significantly decreased and that he required only occasional narcotic pain medication.

In September 2007, Ball experienced further problems with his back. Medical records from Bristol Regional Medical Center include X rays of the lumbar spine revealing mild disc space narrowing at the L5-S1 level and mild degenerative changes. An MRI scan of the lumbar spine showed multilevel degenerative changes. At L5-S1 there was prominent disc protrusion and apparent epidural scarring. Epidural scarring was also suggested at L4-L5 within the left L4 foramen with possible small disc extrusion into the foramen.

On September 19, 2007, Ball told Dr. Brasfield that he had been doing well until about a month earlier. Then he experienced extreme leg pain in the L4 and L5 distribution, pain in the groin area and pain going down the back of his leg, calf and into his foot. All activities aggravated his symptoms and he had more pain than before his previous surgical intervention. Dr. Brasfield observed that Ball had weakness of dorsiflexion and plantar flexion on the left, a positive straight leg raise on the left and negative straight leg raise on the right. On September 20, 2007, Dr. Brasfield performed a left L4-5 partial hemilaminectomy, removal of disc fragment material from the L4 disc, and removal of disc fragment material from the L5 disc.

Two weeks after the surgery, Ball reported that he was "doing excellent," that the pain in his left leg was resolving, and that he has improved dramatically. (R. at 300.) Ball's wife also noted that he was much improved. Dr. Brasfield prescribed Lortab and recommended a walking regimen. He told Ball to avoid heavy lifting and mowing the lawn. In November 2007, Dr. Brasfield noted that Ball reported significantly decreased left leg pain since his September surgery and that Ball still had minimal weakness with dorsiflexion and plantar flexion, "but overall has significantly improved." (R. at 299.) Dr. Brasfield noted that Ball "owns a ranch, is a horseman avidly and that is his profession." *Id.* Dr. Brasfield further recommended that Ball "limit his lifting and risky activities regarding his profession if possible." *Id.*

Medical records from Willis Chiropractic Offices cover the period from May 1999 through November 2007. Ball was treated for low back, right shoulder, and neck pain. X rays of the lumbar spine in 1999 showed a congenital anomaly of the L5 segment with a right towering of the lumbar spine. X rays of the cervical and thoracic spine in 2004 showed ankylosing hyperstotic bone formation at the C3 disc level, minute anterolateral osteophytic formation, lower cervical spine, advanced uncovertebral hypertrophy with facet joint narrowing, subchondral sclerosis and other bony proliferative changes, mid and lower cervical spine, and intervertebral foramina encroachment at the C4-5, C5-6, and C6-7 levels. There was also mild spondylosis in the thoracic spine. Cervical spine X rays in January 2007 showed Forestier's disease with significant anterior ostephyte formation at C3-4, which caused impingement on the esophagus and could produce dysphagia.

In September 2008, Ball presented to Timothy G. McGarry, M.D., an orthopedist. Ball explained his history of back problems and complained "bitterly" of pain, describing it in the lower portion of his back extending down his left leg. Dr. McGarry found significant flattening of the normal lumbar lordosis, range of motion approximately 40 percent of normal in all spectra, a "markedly" positive straight leg raise at approximately 70 degrees on the left, and a negative contralateral straight leg raise. (R. at 159.) Dr. McGarry diagnosed failed low

back syndrome and decided to give Ball an epidural steroid injection for the acute inflammation and also prescribed Lortab.

From July 2009 through December 2009, Ball treated with Matthew W. Wood, Jr., M.D., a neurosurgeon, for problems with his cervical spine. Dr. Wood diagnosed acute C6 disc herniation, right upper extremity C7 radiculopathy, and moderate cervical stenosis at the C6 region related to the disc hernation. In October 2009, Ball underwent C5 anterior cervical diskectomy. Cervical spine imaging that December showed moderate to severe degenerative changes at C3-4 with grade 1 C3 on C4 retrolisthesis that improved with flexion and appeared to worsen slightly with extension.

In her decision, the ALJ noted that this was Ball's second application for social security benefits, the first having been denied on January 10, 2008. The ALJ found that administrative res judicata applied to Ball's present application and that she would not re-open the earlier decision. However, considering only the medical evidence prior to the claimant's last insured date, the ALJ then proceeded through the five steps of the disability analysis. The ALJ found that Ball had the severe impairments of degenerative disc disease of the lumbar spine and a history of right ankle fracture but that neither of these impairments met or medically equaled a listed impairment. The ALJ found that Ball had the residual functional capacity to

perform light work with certain limitations and that he could perform jobs that exist in significant numbers in the national economy and was not disabled.

### III

### A

The preliminary issue to be addressed is whether the ALJ properly denied re-opening Ball's earlier disability determination. Ball argues that the ALJ erred in refusing to re-open his prior application for disability. The Commissioner contends that the ALJ was not required to re-open the earlier application under 20 C.F.R. §§ 404.987-989 (2012).

The ALJ stated administrative res judicata barred re-opening Ball's prior claim and stated that no new evidence had been submitted which would cause a change in the earlier decision. An Article III court usually lacks the jurisdiction to review the Commissioner's decision not to re-open a claim. *See Califano v. Sanders*, 430 U.S. 99, 105-08 (1977). However, jurisdiction to review exists where, even though the Commissioner purports to deny re-opening the claim on principles of res judicata, the record reveals that the merits of the claim have actually been reconsidered. *McGowen v. Harris*, 666 F.2d 60, 65-66 (4th Cir. 1981).

In this case, despite claiming to deny Ball's claim on res judicata grounds, the ALJ clearly reached the merits of the claim. It is true that the Commissioner must be given "some leeway" in determining whether res judicata applies such that some investigation into the asserted factual and legal claims is appropriate. *See Hall v. Chater*, 52 F.3d 518, 521 (4th Cir. 1995) (citing *McGowen*, 666 F.2d at 677). In this case, however, the ALJ's decision was not a limited investigation of Ball's factual and legal claims to determine whether and to what extent they mirror those brought in the earlier claim. Rather, the decision was a determination of Ball's disability claim in detail. The ALJ went through the five-step sequential social security evaluation, carefully recited and assessed the medical evidence, and reached conclusions at each step of the evaluation process. Thus, this court should treat the ALJ's decision as a re-opening of Ball's prior disability claim and consider the merits of the decision. *See McGowen*, 666 F.2d 65-66.

B

The plaintiff bears the burden of proving that he is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

In assessing disability claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or medically equals the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether he could perform other work present in the national economy. *See* 20 C.F.R. § 404.1520(a)(4) (2012). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.* The fourth and fifth steps of the inquiry require an assessment of the claimant's RFC, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.*; *Johnson v. Barnhart*, 434 F.3d 650, 653-54 (4th Cir. 2005).

In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).

Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976). It is not the role of this court to substitute its judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Ball argues that the ALJ erred by failing to consider the medical evidence he submitted which post-dated his date last insured. This evidence includes the records from Dr. McGarry and Dr. Wood. Ball also argues that the ALJ erred in concluding that his back impairment did not meet or medically equal the requirements of 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04A (2012).

The ALJ did not consider any medical records made after Ball's date last insured of December 31, 2007. (R. at 15.) This was in error. While it is true that Ball must prove that he was disabled on or before the date last insured, the fact that medical records are made after that date does not automatically render them irrelevant to his disability determination. As the Fourth Circuit stated in *Wooldridge v. Bowen*, 816 F.2d 157, 160 (4th Cir. 1987), "[M]edical evaluations made subsequent to the expiration of a claimant's insured status are not automatically barred from consideration and may be relevant to prove a previous disability." The *Wooldridge* court cited several cases in support of this

proposition. In *Cox v. Heckler*, 770 F.2d 411, 413 (4th Cir. 1985), the court remanded the case to consider post-insured status evidence because the record demonstrated that the claimant had a progressively deteriorating lung disease which may have reached a disabling degree by the time the insured status expired. In *Moore v. Finch*, 418 F.2d 1224, 1226 (4th Cir. 1969), the court stated that it was error not to consider post-insured status reports of medical evaluations as evidence of possible earlier and progressive degeneration of the claimant's psychoneurotic anxiety.

The ALJ should have considered at least Dr. McGarry's records regarding Ball's continuing and serious problems related to his lumbar spine in determining both whether Ball's impairment met the listing requirement and what Ball's RFC should be. Although Dr. McGarry's records date from September 2008, they indicate that Ball's serious lower back problems had not been resolved in December 2007, but rather continued to cause significant problems, including a a "markedly" positive straight leg raise at approximately 70 degrees on the left. (R. at 159.) In concluding that Ball's condition did not meet or medically equal the listing requirements, the ALJ relied on the evidence indicating in December 2007 that the surgeries on Ball's back had successfully resolved his problems. The evidence from Dr. McGarry undercuts that evidence to a point and should have

been considered by the ALJ.[2]  Whether it actually leads to a determination that Ball's condition met or medically equaled a listing impairment is for the ALJ to conclude, but she must consider all the relevant evidence.

## IV

For the foregoing reasons, the final decision of the Commissioner will be vacated and the case will be remanded for further administrative consideration in accord with this opinion.

DATED:   July 26, 2012

/s/  James P. Jones
United States District Judge

---

[2]  The evidence from Dr. Wood is less relevant.  There is very little indication that Ball was suffering from an impairment related to his cervical spine before his date last insured.  Although there was evidence of degeneration before 2007 from the chiropractic record, Ball made no complaints regarding this issue during that time.  It was not until two years later that the cervical spine became a real issue.  However, because there was some evidence of cervical spine degeneration before the date last insured, the ALJ should have at least addressed and explained the reasons for not considering the post-insured evidence.